| STATE OF INDIANA | ) | IN THE BOONE SUPERIOR COURT NO. 1 |
|---|---|---|
| | ) SS: | |
| COUNTY OF BOONE | ) | ESTATE DOCKET: 06D01-0911-EU-131 |

STEVEN R. KOZLOWSKI,    )
                                      )
             Plaintiff,    )
                                        )
     v.    )
                                        )
SUSAN M. KOZLOWSKI, individually    )
and as Personal Representative of the    )
ESTATE OF ROBERT KOZLOWSKI,    )
JESSICA HORWITZ,    )
ZACHARY HORWITZ    )
                                        )
            Defendants.    )

**FILED**

FEB 2 3 2010

CLERK BOONE SUPERIOR COURT I

## <u>VERIFIED COMPLAINT TO CONTEST WILL</u>

Plaintiff, Steven R. Kozlowski ("Steven"), by counsel, for his Verified Complaint to

Contest Will against the Defendants, alleges and states as follows:

### <u>Introduction</u>

1.     Steven brings this action against Susan M. Kozlowski (individually and as

Personal Representative of the Estate of Robert C. Kozlowski, hereinafter "Susan"), the second

wife of his late father, Robert C. Kozlowski (hereinafter "Robert") to set aside the purported Last

Will and Testament of Robert dated April 30, 2007 (the "Altered Will" attached hereto as

Exhibit "A"). In addition, Steven brings this action against Jessica Horwitz and Zachary Horwitz

only because they are persons beneficially interested in the Altered Will (through a purported

codicil to the Altered Will dated August 28, 2009 (the "Codicil" attached hereto as Exhibit "B"))

as set forth in Ind. Code § 29-1-7-17.

1

2.  Steven is the only child of Robert, his son from his first marriage to Carolle Denis. Susan is the second wife of Robert, and Jessica Horwitz and Zachary Horwitz are her children. Jessica Horwitz and Zachary Horwitz are not related to Robert nor have they been adopted by Robert.

3.  Upon information and belief, prior to the purported signing of the Altered Will, Robert had a last will and testament that devised and bequeathed substantially all of the probate assets to his only child, Steven (the "Valid Will"). It is believed that Robert executed the Valid Will prior to his marriage to Susan. The Valid Will may be in the possession of Robert's prior attorney(s), Susan, and/or her attorney(s).

4.  To preserve Robert's testamentary intent that Steven—and not Susan—receives substantially all of Robert's assets upon his death, Robert and Susan jointly drafted and executed a valid, enforceable prenuptial agreement (as referenced in the Altered Will) (the "Prenuptial Agreement"). The Prenuptial Agreement may be in the possession of Robert's prior attorney(s), Susan, and/or her attorney(s).

5.  The Altered Will, which was purportedly signed on April 30, 2007, dramatically altered Robert's estate plan to the benefit of Susan at a time when Robert was heavily medicated and afflicted with pulmonary fibrosis and PCP pneumonia.

6.  Notwithstanding Robert's clear testamentary intent that Steven should receive substantially all of Robert's assets upon his death as reflected in the Valid Will and reaffirmed in the Prenuptial Agreement, the Altered Will disinherited Steven to the benefit of Susan and her children. *See* Exhibit A, Articles II and III; Exhibit B.

7.  Accordingly, Steven has brought this action to see that Robert's actual wishes— when he was not under undue influence—are carried out.

2

## Parties, Jurisdiction, and Venue

8.     Robert died on October 15, 2009, at the age of 62. He was domiciled in Boone County, Indiana at the time of his death.

9.     Steven is the natural son of Robert and is domiciled in Miami-Dade County, Flordia.

10.     As the son of Robert, Steven is an interested party in his estate pursuant to Ind. Code § 29-1-1-3.

11.     Susan is the personal representative of Robert's estate and is domiciled in Boone County, Indiana.

12.     Jessica Horwitz is the natural child of Susan and Howard J. Horwitz and is a person beneficially interested in the Altered Will (via the Codicil) as set forth in Ind. Code § 29-1-7-17. She is domiciled in Cook County, Illinois and is not related nor been adopted by Robert.

13.     Zachary Horwitz is the natural child of Susan and Howard J. Horwitz and is a person beneficially interested in the Altered Will (via the Codicil) as set forth in Ind. Code § 29-1-7-17. He is domiciled in Zionsville, IN and is not related nor been adopted by Robert.

14.     Jurisdiction and Venue are proper pursuant to Ind. Trial Rules 75(A)(2) and 75(A)(8).

## Background Facts

15.     Robert was born on October 11, 1947 in Norwich, CT.

16.     In 1968, Robert married Carolle Denis, and Steven is the only child of that marriage.

17.     Steven enjoyed a good relationship with his father and had, throughout his life, been the natural objects of his affection and benevolence.

3

18. Robert divorced Carolle Denis in 1993.

19. Between 1991 and 2000, Robert lived with Lynn Slone ("Lynn") in Kendallville, Indiana. Robert and Lynn never married because they each wanted to keep their assets separate.

20. In November, 2000, Robert met Susan at the Foxwoods Resort Casino in Mashantucket, Connecticut. Prior to meeting Susan, Robert had already amassed substantially all of his probate and non-probate assets.

21. At the time they met, Susan was litigating a child support case following her contentious divorce proceedings with Howard J. Horwitz. In the beginning of 2003, Susan moved into the Robert's residence in Kendasville, Indiana.

22. Robert and Susan married on June 17, 2004. Upon information and belief, prior to getting married, Robert and Susan jointly drafted and executed the Prenuptial Agreement. Upon information and belief, the purpose of the Prenuptial Agreement was to: (i) preserve and protect Robert's intent to bequeath and devise his assets to Steven upon Robert's death; and (ii) recognize the gross disparity in the value of each party's premarital assets and consequently predetermine the rights and obligations for the division of property acquired before or after the marriage in the event of divorce or death of either party.

### Robert's Illnesses

23. On or about January/February of 2005, Robert was diagnosed with a rare form of Non-Hodgkin's Lymphoma. Prior to this diagnosis, Robert had never been diagnosed with a serious illness and appeared to be in good health.

24. Subsequent to diagnosis, Robert consulted with and sought opinions from various medical facilities, including the Mayo Clinic in Minnesota.

4

25. Robert remained generally asymptomatic through 2005 and the general medical advice was to wait and see how the lymphoma progressed.

26. In 2006, Robert began experiencing symptoms from the Lymphoma including Lymphedema, which is the localized collection of lymphatic fluid due to blockage. Robert began experiencing Lymphedema in his legs.

27. In 2006 Robert also began having bouts with Cellulitis, a bacterial infection related to Lymphedema. Robert was hospitalized on more than one occasion for Cellulitis. Cellulitis, if untreated is life threatening for patients with Lymphoma.

28. In order to treat the now symptomatic lymphoma and resulting lymphadema, Robert began radiation treatments at the Indiana University Cancer Center in Indianapolis, Indiana. Robert began receiving Rituxan treatments.

29. In April of 2007, Robert began feeling seriously ill after receiving radiation therapy.

30. In particular, Robert began having trouble breathing. His condition worsened by the end of April 2007. Robert was concerned that he would have to be hospitalized.

31. Robert's condition continued to worsen and his state-of-mind was compromised. Shortly thereafter, Robert was hospitalized with severe pulmonary distress. Robert was diagnosed with PCP Pneumonia, which is a life-threatening condition for individuals such as Robert who suffered from a compromised immune system. Robert had been suffering from PCP Pneumonia as early April 2007.

32. Further, Robert was diagnosed with Pulmonary Fibrosis, which was caused by a reaction to his prior Rituxan treatments prior to April 2007. The damage caused by the fibrosis

made Robert susceptible to PCP Pneumonia of which he became symptomatic starting in April 2007.

33. As a result of his pulmonary distress and the undiagnosed illness in April 2007, Robert could not act independently and relied on Susan.

34. Susan was aware of and had knowledge of Robert's weakened and susceptible state of mind.

35. During this period of Robert's declining health in late 2006 and early 2007, Susan took control of Robert's healthcare management and influenced other aspects of his life.

36. Robert became dependent on Susan for all facets of his medical care and wellbeing. Susan was responsible for informing Steven of Robert's medical condition of which she deliberately minimized, including but not limited to informing Steven of the May 2007 emergency after hospitalization. Susan also informed Steven that it was not necessary to visit during the hospitalization and did not fully disclose to him of the serious stage of the Pneumonia.

37. Subsequent from his release from his first major hospitalization Robert remained on a routine of daily medications.

38. Robert's illness continued to progress and his condition continued to deteriorate. Between September and November 2008, Robert began a series of in-patient chemotherapy treatments to prepare him for a stem-cell transplant.

39. In November 2008, Robert received a stem-cell transplant at the Indiana University Cancer Center. The treatment was determined to be unsuccessful. Robert continued to suffer from the Lymphedema and the effects of the Lympohma subsequent to the stem-cell transplant.

6

40.     In the summer of 2009, Robert's condition began to deteriorate rapidly and he began pain management care with an oncology pain management specialist. Robert was being given significant amounts of medication on a daily basis.

41.     In August 2009, Robert entered into home hospice care at his home in Zionsville, Indiana. Robert was heavily medicated and unable to care for himself.

42.     Robert's condition continued to deteriorate rapidly. On October 15, 2009, Robert passed away days after his 62nd birthday.

### *Genesis of the Altered Will*

43.     Upon information and belief, while Robert was seriously ill with Pulmonary Fibrosis and PCP pneumonia, Susan attempted to circumvent the provisions of the Valid Will (or the Indiana intestacy statutes) and Prenuptial Agreement by directing the drafting of the Altered Will.

44.     On April 30, 2007, while seriously ill with Pulmonary Fibrosis and PCP pneumonia in Indianapolis, Indiana, Robert purportedly signed[1] the Altered Will in a heavily medicated state. No videotape or audio recording was made of Robert's purported execution of the Altered Will.

45.     At all times relevant herein, the witnesses listed in Altered Will were in Kendallville, Indiana while Robert was in Indianapolis, Indiana purportedly signing the Altered Will.

46.     Upon information and belief, the witnesses listed in the Altered Will did not witness: (i) Robert sign the Altered Will; (ii) acknowledge his signature in the Altered Will; or

---

[1] Steven does not admit to the authenticity of the Robert's signature on the Altered Will and reserves the right to present expert testimony as to the potential forgery of same.

(iii) someone else sign the Altered Will in Robert's name at Robert's direction and in Robert's presence.

*Altered Will Circumvented Robert's Estate Plan by Diverting Control and Assets to Susan*

47.     The Altered Will made material changes to Robert's estate plan.

48.     Upon information and belief, the Valid Will bequeathed and devised substantially all of Robert's probate assets to Steven. In addition, Steven was appointed the personal representative of Robert's estate. Upon information and belief, the Prenuptial Agreement affirmed Robert's desire to leave his probate assets to Steven.

49.     The Altered Will disinherited Steven to the benefit of Susan and her children. *See* Exhibit A, Articles II and III.

50.     The Altered Will removed Steven as personal representative of Robert's estate and appointed Susan as the personal representative. *See* Exhibit A, Article IV.

51.     If Susan could not serve as personal representative of Robert's estate, the Altered Will appointed Jessica Horwitz, Susan's daughter who is unrelated to Robert, to serve as personal representative. *See* Exhibit A, Article IV.

52.     In no event was Steven to serve as personal representative under the Altered Will. *See* Exhibit A, Article IV.

8

## *Genesis of the Codicil*

53.     Upon information and belief, while Robert's health deteriorated due to the advancing stages of Non-Hodgkin's Lymphoma, Susan attempted to circumvent the provisions of both the Valid Will and Prenuptial Agreement by directing the drafting of the Codicil through her attorney(s).

54.     On August 28, 2009, while in hospice care and dying from Non-Hodgkin's Lymphoma, Robert purportedly signed[2] the Codicil in a semi-conscious and heavily medicated state.  No videotape or audio recording was made of Robert's purported execution of the Codicil.

55.     Upon information and belief, the witnesses listed in the Codicil did not witness: (i) Robert sign the Codicil; (ii) acknowledge his signature in the Codicil; or (iii) someone else sign the Codicil in Robert's name at Robert's direction and in Robert's presence.

56.     Upon information and belief, neither Susan nor her attorney(s) provided Robert with a copy of the Codicil.

## *Codicil Circumvented Robert's Estate Plan by Diverting Assets to Susan and Her Children*

57.     The Codicil made material changes to Robert's estate plan.

58.     Upon information and belief, the Valid Will bequeathed and devised substantially all of Robert's probate assets to Steven.  In addition, Steven was appointed the personal representative of Robert's estate.  The Prenuptial Agreement affirmed Robert's desire to leave his probate assets to Steven.

59.     Pursuant to the terms of the Codicil, Robert bequeathed Steven ONE HUNDRED TWENTY FIVE THOUSAND AND NO/100 DOLLARS ($125,000.000) and one-third (1/3) of the net proceeds from the sale of Robert's recreational property. *See* Exhibit B, Article II.

---

[2] Steven does not admit to the authenticity of the Robert's signature on the Codicil and reserves the right to present expert testimony as to the potential forgery of same.

9

60. Jessica Horwitz and Zachary Horwitz were each bequeathed ONE HUNDRED TWENTY FIVE THOUSAND AND NO/100 DOLLARS ($125,000.000) and one-third (1/3) of the net proceeds from the sale of Robert's recreational property. *See* Exhibit B, Article II.

61. Pursuant to the terms of the Codicil, the remainder of Robert's estate went to Susan. *See* Exhibit B, Article II.

### Count I – Will Contest

62. Steven incorporates by reference herein the allegations set forth in paragraphs 1 - 50 as though fully set forth herein.

63. Steven is an interested party in Robert's estate pursuant to Ind. Code § 29-1-1-3, with standing to bring claims asserting a Will Contest.

64. The Altered Will was not executed properly pursuant to Ind. Code § 29-1-5-3; therefore, is invalid, illegal, and should be revoked.

65. The Altered Will was obtained through fraud, duress, and/or other breaches; therefore, is invalid, illegal, and should be revoked.

66. On April 30, 2007, Robert did not have sufficient capacity to know the extent and value of his property, those who were the natural objects of his bounty, their desserts with respect to their treatment and conduct towards him, and to retain such facts in mind long enough to have a will prepared and executed.

67. Accordingly, Robert lacked the necessary capacity to legally execute the Altered Will.

68. The Altered Will was the result of the unlawful imposition of Susan, whereby the victim, Robert, was forced to do an act which was the result of undue influence.

69. Since the Altered Will is illegal and invalid, any and all codicils to same are thereby illegal and invalid.

70. The Codicil was not executed properly pursuant to Ind. Code § 29-1-5-3; therefore, is invalid, illegal, and should be revoked.

71. The Codicil was obtained through fraud, duress, and/or other breaches; therefore, is invalid, illegal, and should be revoked.

72. On August 28, 2009, Robert did not have sufficient capacity to know the extent and value of his property, those who were the natural objects of his bounty, their desserts with respect to their treatment and conduct towards him, and to retain such facts in mind long enough to have a codicil prepared and executed.

73. Accordingly, Robert lacked the necessary capacity to legally execute the Codicil.

74. The Codicil was the result of the unlawful imposition of Susan, facilitated by her attorney(s), whereby the victim, Robert, was forced to do an act which was the result of undue influence.

### Relief Requested

WHEREFORE, the Plaintiff, Steven R. Kozlowski, prays that the Court:

1. Invalidate the Altered Will;

2. Invalidate the Codicil;

3. Revoke its Order admitting the Altered Will and Codicil to Probate;

4. Appoint Chris Shelby, P.O. Box 743, 116 N. West Street, Lebanon, Indiana 46062, a duly licensed attorney at law and resident of Boone County, Indiana as personal representative;

5. Order the Plaintiff to tender ONE THOUSAND AND NO/100 DOLLARS ($1000.00) payable to the Clerk of the Court of Boone County, Indiana as bond required under Ind. Code § 29-1-7-19;

6. Order an accounting of all inter vivos transfers of Robert Kozlowski's assets between June 17, 2004 and the date of his death;

7. Order an accounting of all assets of the Estate of Robert Kozlowski and any purported transfers by Susan M. Kozlowski therefrom;

8. Order the imposition of a constructive trust to safeguard all of Robert Kozlowski's assets including without limitation any and all assets distributed to Susan M. Kozlowski, Jessica Horwitz, and/or Zachary Horwitz until the remainder of Steven R. Kozlowski's claims are resolved;

9. Order Susan M. Kozlowski to produce the Prenuptial Agreement and to enforce the provisions contained therein;

10. Order Susan M. Kozlowski to produce any and all wills previous to the Altered Will of Robert Kozlowski;

11. Declare the Valid Will as the last will and testament of Robert Kozlowski;

12. In the event that a valid, properly executed will of Robert Kozlowski (other than the Altered Will and Codicil) cannot be produced, declare that Robert Kozlowski died intestate;

13. Declare that the Prenuptial Agreement was in full force and effect at the time of Robert Kozlowski's death;

14. Award attorneys fees and the costs of this action to Plaintiff; AND

15. Grant all other relief just and proper in the premises.

*Remainder of Page Intentionally Blank*

12

I affirm under penalties of perjury that the foregoing representations are true to the best of my knowledge and belief.

Steven Robert Kozlowski

Respectfully Submitted,

Richard D. Hailey, Attorney No. 7375-49
RAMEY & HAILEY
9333 N. Meridian Street, Suite 105
Indianapolis, Indiana 46260
Telephone: (317) 582-0000
Facsimile: (317) 582-0080
Rich@RameyandHaileyLaw.com

Justin W. Leverton, Attorney No. 25678-49
RAMEY & HAILEY
9333 N. Meridian Street, Suite 105
Indianapolis, Indiana 46260
Telephone: (317) 582-0000
Facsimile: (317) 582-0080
Justin@RameyandHaileyLaw.com

*Counsel for Steven R. Kozlowski*

13

Exhibit "A"

FILED

NOV 2 4 2009

*Doug S. Bogan*

CLERK BOONE SUPERIOR COURT I

1ミ 0911 - EUミ: 132

# LAST WILL AND TESTAMENT

## OF

## ROBERT KOZLOWSKI

I, ROBERT KOZLOWSKI, domiciled in Boone County, Indiana, being of sound and disposing mind and memory, do make, publish, and declare this document to be my Last Will and Testament, and I hereby revoke all Wills and Codicils heretofore made by me.

### ARTICLE I

I direct that my enforceable debts, expenses of my last illness, and funeral and administration expenses of my estate shall be paid by my Personal Representative from the principal of my residuary estate. In its discretion, my Personal Representative may continue to pay any installment obligations incurred by me during my lifetime on an installment basis, or may prepay any or all of the such obligations in whole or in part, and my Personal Representative may, in its discretion, distribute any asset encumbered by such an obligation subject to the obligation.

I further direct my Personal Representative to pay all estate, inheritance and succession or other taxes, state or federal, together with any interest or penalty thereon, which may be assessed as a result of my death, without regard to whether such taxes be payable by my estate or by the recipient of any property and without regard to whether such taxes are upon property

1

passed by the terms of this will or in any other manner. All such taxes shall be paid out of the residue of my estate, as part of the expenses of the administration thereof, and they shall not be charged against the recipient of such property or any beneficiary of this will, other than the beneficiaries of the residue of my general estate.

## ARTICLE II

Notwithstanding any provision in our Ante-Nuptial Agreement to the contrary, all the rest, residue and remainder of the property which I own at the time of my death, being all property, real and personal, tangible and intangible, wherever situated, I give to my wife, SUSAN M. KOZLOWSKI, if she survives me. It is my intention to exclude all of our children under the terms of this article.

## ARTICLE III

My wife and I both have children from a prior marriage; our children include my child: STEVEN KOZLOWSKI, and my wife's children: JESSICA HORWITZ and ZACHARY HORWITZ.

If my wife, SUSAN M. KOZLOWSKI, predeceases me, all of the rest, residue and remainder of my property which I own at my death is hereby given to our three children, in equal shares. If any of our three children predecease me, the interest which would have passed to him or her had he or she survived me is hereby given in equal shares to his or her then living issue,

per stirpes, if any, and if none, that deceased child or step-child's share shall be given to our remaining children in equal shares.

## ARTICLE IV

I hereby appoint my wife, SUSAN M. KOZLOWSKI, as Personal Representative of this my Last Will and Testament. If she cannot serve or continue to serve (or is removed), in that capacity, for any reason, I appoint JESSICA HORWITZ, as Personal Representative. I request that no bond be required of any of such Personal Representatives in such capacities, provided, however, if a bond is required, then I request that such bond be nominal in amount.

I hereby grant to any fiduciaries appointed or serving hereunder, the powers as provided by Indiana law to such fiduciary in acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property, the fiduciary shall exercise the judgment and care under the circumstances then prevailing which individuals of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

I specifically authorize my Personal Representative to proceed with unsupervised administration.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, to this my last will and testament, consisting of this and two preceding

3

typewritten pages, and for the purpose of identification I have signed each such page, all in the presence of the persons witnessing it at my request on this 30th day of April, 2007, at Kendallville, Indiana.

_Robert Kozlowski_
ROBERT KOZLOWSKI, Testator

The foregoing instrument, was signed, sealed, published and declared by ROBERT KOZLOWSKI, the Testator, to be the Testator's last will and testament, in our presence, and we at the Testator's request and in the Testator's presence and in the presence of each other have hereunto subscribed our names as witnesses, this 30th day of April, 2007 at Kendallville, Indiana.

_____     _Kristin K King_
Witness                Witness

## ACKNOWLEDGMENT

UNDER PENALTIES FOR PERJURY, we, the undersigned Testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument declare:

(1)     that the Testator executed the instrument as the Testator's will;

(2)     that, in the presence of both witnesses, the Testator signed or acknowledged the signature already made or directed another to sign for the Testator, in the Testator's presence,

(3)     that the Testator executed the will as a free and voluntary act for the purposes expressed in it;

4

(4) that each of the witnesses, in the presence of the Testator and of each other, signed the will as a witness;

(5) that the Testator was of sound mind when the will was executed; and

(6) that to the best knowledge of each of the witnesses the Testator was, at the time the will was executed, eighteen (18) or more years of age or was a member of the armed forces or of the merchant marine of the United States or its allies.

Dated this 30th day of April, 2007.

_____
ROBERT KOZLOWSKI, Testator

Witness Signature: _____

      Printed: Douglas J. Atz

Resident of Kendallville, Noble County, State of Indiana

Witness Signature: _____

      Printed: Kristin L. King

Resident of Churubusco, Whitley County, State of Indiana

FILED

NOV 2 4 2009

*[signature]*
ERK BOONE SUPERIOR COURT I

Exhibit "B"

01 = 0.911  EU  132

# FIRST CODICIL TO THE LAST WILL AND TESTAMENT OF

## Robert C. Kozlowski

I, Robert C. Kozlowski, a resident of Boone County, Indiana, presently residing at 11537 Willow Springs Drive, Zionsville, Indiana, do make, publish and declare this to be the First Codicil to my Last Will and Testament, executed by me on August 28, 2009.

I hereby revoke ARTICLE I of my Last Will and Testament and in lieu thereof, add the following:

### ARTICLE I

I direct that my enforceable debts, expenses of my last illness, and funeral and administration expenses of my estate be paid by my Personal Representative from the principal of my residuary estate. In its discretion, my Personal Representative may continue to pay any installment obligations incurred by me during my lifetime on an installment basis, or may prepay any or all of such obligations in whole or in part, and my Personal Representative may, in its discretion, distribute any asset encumbered by such an obligation subject to the obligation.

I further direct my Personal Representative, subject to the exceptions stated in ARTICLE II as presented in this codicil, to pay all estate, inheritance and succession or other taxes, state or federal, together with any interest or penalty thereon, which may be assessed as a result of my death, without regard to whether such taxes be payable by my estate or by the recipient of any property and without regard to whether such taxes are upon property passed by the terms of this will or in any other manner. All such taxes shall be paid out of the residue of my estate, as part of the expenses of

1



the administration thereof, and, other than the exceptions stated in the terms of ARTICLE II as presented in this codicil, they shall not be charged against the recipient of such property or any beneficiary of this will, other than the beneficiaries of my residue of my general estate.

I hereby revoke **ARTICLE II** of my Last Will and Testament and in lieu thereof, add the following:

## ARTCLE II

Notwithstanding any provision in our Ante-Nuptial Agreement to the contrary, all the rest, residue and remainder of the property which I own at the time of my death, being all the property, real and personal, tangible and intangible, wherever situated, I give to my wife, SUSAN M. KOZLOWSKI, if she survived me. It is my intention to exclude all of our children under the terms of this article, with the following exceptions:

Upon my death I give and bequeath to my loving and beautiful children:

- STEVEN KOZLOWSKI, currently residing at 6101 Aqua Avenue #102, Miami Beach, Florida 33141;

- JESSICA HORWITZ, currently residing at 2837 North Cambridge Unit #3, Chicago, Illinois 60657, and;

- ZACHARY HORWITZ, 11537 Willow Springs Drive, Zionsville, Indina 46077;

The following:

A) I give, devise and bequeath to each above referenced child, One Hundred Twenty-Five Thousand Dollars ($125,000.00), with my estate paying any inheritance taxes due arising from this amount only.

2



**B)** . In addition each above named child shall share equally in the net proceeds of the following assets which are to be sold upon my death:

1) 1997 Harley Davidson Soft Tail Classic, VIN #1HD1BJL40VY034563, currently located at 11537 Willow Springs Drive, Zionsville, Indiana 46077;

2) 2006 Jeep Wrangler, VIN #1J4FA44546P702844, currently located at 11537 Willow Springs Drive, Zionsville, Indiana 46077;

3) 2006 American Eagle RV, VIN #4VZBR1J996C052864, currently located at 618 Sumpter Drive Unit A7, Fort Wayne, Indiana 46804;

4) Toy Shed Condo Unit A-7, 618 Sumpter Drive, Fort Wayne, Indiana 46804, and;

5) Apartments 634, 636, 638B, 638, and 640, East North Street, Kendallville, Indiana 46755;

The assets listed in Part B, above, are to be liquidated at the earliest convenience, at whatever price the market will dictate. If liquidated prior to my death the net proceeds shall be distributed equally among my above named children upon my death, according to the above bequest.

My estate shall maintain the costs associated with the above listed assets until liquidation. Each recipient of the above bequest shall be responsible for any inheritance tax associated with the assets which he or she receives.

Any exemptions or deductions available for estate, inheritance and succession or other taxes, state or federal, which may be available to reduce tax liability arising from the transfers made pursuant to PART A and PART B of this ARTICLE II, shall first be applied to the tax liability arising from the transfers of PART A, with any remaining exemptions or deductions then being applied to PART B.



C)  "So, as you see, a little gift and a little work with a benefit attached."

"Thank you for bringing such joy to my life. I know you will each do exceptionally well in the future."

Your loving Father,

Bob

In all other respects, I ratify and confirm all of the remaining provisions of my Last Will and Testament, dated ___April 30___, 200_7_.  _RK_

IN TESTIMONY WHEREOF, I have subscribed my name to this my First Codicil to my Last Will and Testament, consisting of five (5) typewritten pages including the Acknowledgement Page following, affixing my initials to each of the pages for better identification, all in the presence of the persons witnessing it at my request on this 28th day of August, 2009, at 811 South Range Line Road in Carmel, Indiana.

_Robert C Kozlowski_
Robert C. Kozlowski, Testator

The foregoing instrument, consisting of five (5) typewritten pages including the Acknowledgement Page following, was signed, sealed, published and declared by ROBERT C. KOZLOWSKI, Testator, to be the First Codicil to his Last Will and Testament in our presence, and we, at his request and in his presence and in the presence of each other, have hereunto subscribed our names as witnesses on this 28th day of August, 2009.

_____ residing at _Zionsville, IN_____

_____ residing at _Indianapolis, IN_____

4

## ACKNOWLEDGMENT OF CODICIL TO THE LAST WILL AND TESTAMENT OF

### Robert C. Kozlowski

UNDER THE PENALTIES FOR PERJURY, we, the undersigned Testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument, declare:

1. That the Testator executed the instrument as his Codicil;

2. That, in the presence of both witnesses, the Testator signed or acknowledged his signature already made or directed another to sign for him in his presence;

3. That the Testator executed the Codicil as his free and voluntary act for the purposes expressed in it;

4. That each of the witnesses, in the presence of the Testator and of each other, signed the Codicil as a witness;

5. That the Testator was of sound mind; and

6. That the Testator was at the time eighteen (18) or more years of age.

_____
Robert C. Kozlowski, Testator

_____
Witness

_____
Witness

DATED: August 28, 2009

-5-