# COMPARISON OF FEDERAL AND STATE COURT ACTIONS

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| 1. This matter involves an action by Plaintiff, the only son of the Decedent Robert Kozlowski against Susan, the decedent's second wife of five years. Plaintiff brings this action against Susan, who after Robert was diagnosed with a terminal illness in 2005, began a deliberate effort to circumvent her prenuptial agreement with Robert and tortiously interfere with Plaintiff's inheritance. At the time of Robert's diagnosis, Susan was bound by a prenuptial agreement and was also aware that Robert's $11,000,000 estate was intended for Plaintiff. Susan abused her position of confidence with Robert while he was in a diminished state of mental capacity through his illness, treatment and medication and intentionally interfered with Robert's lifelong plan to bequest his $11,000,000 estate to his only son, Steven.<br><br>6. Plaintiff Steven brings this action against Defendant Susan, the second wife of his late father, Robert c. Kozlowski (hereinafter "Robert") because Susan tortiously interfered with Steven's inheritance from his father.<br><br>57. After his death, Robert's purported last will and testament dated April 30, 2007 was probated in Boone Superior Court 1, Estate Docket: 06D01-0911-EU-131 (the "2007 Will"). A copy of the 2007 Will is attached hereto as Exhibit "C".<br><br>4. Plaintiff Steven is the natural son of Robert and is domiciled in Miami-Dade County, Florida. Plaintiff is the only son of Robert.<br><br>5. Susan is the second wife of Robert and is currently the personal representative of Robert's estate. Susan is domiciled | 1. Steven brings this action against Susan M. Kozlowski (individually and as Personal Representative of the Estate of Robert C. Kozlowski, hereinafter "Susan"), the second wife of his late father, Robert C, Kozlowski (hereinafter "Robert") to set aside the purported Last Will and Testament of Robert dated April 30, 2007 (the "Altered Will" attached hereto as Exhibit "A"). In addition, Steven brings this action against Jessica Horwitz and Zachary Horwitz only because they are persons beneficially interested in the altered Will (through a purported codicil to the Altered Will dated August 28, 2009 (the "Codicil" attached hereto as Exhibit "B")) as set forth in Ind. Code § 29-1-7-17.<br><br>7. Accordingly, Steven has brought this action to see that Robert's actual wishes – when he was not under undue influence – are carried out.<br><br>2. Steven is the only child of Robert, his son from his first marriage to Carolle Denis. Susan is the second wife of Robert, and Jessica Horowitz and Zachary Horowitz are her children. Jessica Horowitz and Zachary Horowitz are not related to Robert nor have they been adopted by Robert. |

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| in Boone County, Indiana. | 9. Steven is natural son of Robert and is domiciled in Miami-Dade County, Florida. |
| 29. Prior to marrying Susan, Robert had a last will and testament that devised and bequeathed substantially all of the probate assets to his only child, Steven (the "Valid Will"). A copy of the "Valid Will" is attached as Exhibit "A." | 3. Upon information and belief, prior to the purported signing of the Altered Will, Robert had a last will and testament that devised and bequeathed substantially all of the probate assets to his only child, Steven (the "Valid Will"). It is believed that Robert executed the Valid Will prior to his marriage to Susan. The Valid Will may be in the possession of Robert's prior attorney(s), Susan, and/or her attorney(s). |
| 33. To preserve Robert's testamentary intent that Steven – and not Susan – receives substantially all of Robert's assets upon his death, Robert and Defendant Susan jointly drafted and executed a valid, enforceable Prenuptial Agreement (the "Prenuptial Agreement") prior to their marriage. A copy of the Prenuptial Agreement is attached hereto as Exhibit "B." | 4. To preserve Robert's testamentary intent that Steven – and not Susan – receives substantially all of Robert's assets upon his death, Robert and Defendant Susan jointly drafted and executed a valid, enforceable Prenuptial Agreement (as referenced in the Altered Will)[1] (the "Prenuptial Agreement"). The Prenuptial Agreement may be in the possession of Robert's prior attorney(s), Susan, and/or her attorney(s). |
|  | 5. The Altered Will, which was purportedly signed on April 30, 2007, dramatically altered Robert's estate plan to the benefit of Susan at a time when Robert was heavily medicated and afflicted with pulmonary fibrosis and PCP pneumonia. |
| 2. This Court has jurisdiction over this cause of action because diversity of citizenship of the parties | 14. Jurisdiction and Venue are proper pursuant to Ind. Trial Rules 75(A)(2) and 75(A)(8). |
| 3. The Defendant resides in the Southern District of Indiana. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1). |  |
| 7. Robert was born on October 11, 1947 in Norwich, Connecticut to Chester Kozlowski and Theresa Kozlowski. Robert had a sister Jean Kozlowski-Desrosiers that [sic] is 10 | 15. Robert was born on October 11, 1947 in Norwich, CT. |

---

[1] The Boone County action refers to Robert's last will and testament dated April 30, 2007 as the "Altered Will." The District Court complaint refers to the same document as the "2007 Will."

2

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| years younger than him. | |
| 8. In 1968, Robert married Carolle Denis and Steven is the only child of that marriage. Steven was born in 1969 and is the only child of Robert. | 16. In 1968, Robert married Carolle Denis, and Steven is the only child of that marriage. |
| 9. Steven enjoyed a close relationship with his father and had, throughout his life, been the natural object of his affection and benevolence. | 17. Steven enjoyed a good relationship with his father and had, throughout his life, been the natural objects [sic] of his affection and benevolence. |
| 11. In 1993, Robert and Carolle divorced after being married for 23 years. Steven maintained a close relationship with his father through his parents' separation and divorce. Steven became closer with Robert after the divorce despite the challenges of being an only child of divorced parents. | 18. Robert divorced Carolle Denis in 1993. |
| 22. In November of 2000, Robert was in Connecticut visiting his mother and sister for the Thanksgiving holiday. | 20. In November, 2000, Robert met Susan at the Foxwoods Resort Casino in Mashantucket, Connecticut. Prior to meeting Susan, Robert had already amassed substantially all of his probate and non-probate assets. |
| 23. Robert, his sister Jean and her husband, Eddy Desrosiers, were all at a lounge at the Foxwoods Resort and Casino in Mashantucket, Connecticut. Robert's sister Jean struck up a conversation in the ladies room with a woman who was complaining about her internet date. Jean jokingly stated "you should meet my brother, he's good looking and he's loaded." The woman Jean was speaking to was Defendant Susan. | |
| 27. In the summer of 2002, Susan relocated to Fort Wayne, Indiana where Robert had moved after Lynn's passing. | 21. At the time they met, Susan was litigating a child support case following her contentious divorce proceedings with Howard J. Horowitz. In the beginning of 2003, Susan moved into Robert's residence in Kendallville, Indiana. |
| 28. At that time, Susan was still involved in legal proceedings with her ex-husband over financial issues. Susan's battles with her ex-husband over money lasted from 1998-2004. | |
| 32. Robert and Susan married on June 17, 2004 at a private ceremony in Arizona. Steven was present at the wedding. | 22. Robert and Susan married on June 17, 2004. Upon information and belief, prior to getting married, Robert and Susan jointly drafted and executed the Prenuptial Agreement. Upon information and belief, the purpose of the Prenuptial Agreement |
| 33. To preserve Robert's testamentary intent that Steven—and | |

3

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| not Susan—receives substantially all of Robert's assets upon his death, Robert and Defendant Susan jointly drafted and executed a valid, enforceable Prenuptial Agreement (the "Prenuptial Agreement") prior to their marriage. A copy of the Prenuptial Agreement is attached hereto as Exhibit "B". | was to (i) preserve and protect Robert's intent to bequeath and devise his assets to Steven upon Robert's death; and (ii) to recognize the gross disparity in the value of each party's premarital assets and consequently predetermine the rights and obligations for the division of property acquired before or after the marriage in the event of divorce or death of either party. |
| 34. The Prenuptial Agreement transferred substantially all of Robert's non-probate assets to Steven upon Robert's death. *See* Ex. "B." | 6. Notwithstanding Robert's clear testamentary intent that Steven should received substantially all of Robert's assets upon his death as reflected in the Valid Will and reaffirmed in the Prenuptial Agreement, the Altered Will disinherited Steven to the benefit of Susan and her children. *See* Exhibit A, Articles II and III; Exhibit B. |
| 37. The content of the Prenuptial Agreement in Exhibit B is consistent with Robert's lifelong position on his assets going to his son. | |
| 38. In January of 2005, Robert was diagnosed with a rare form of Non-Hodgkin's Lymphoma. Prior to this diagnosis, Robert had never been diagnosed with a serious and potentially terminal illness and appeared to be in good health. | 23. On about January/February of 2005, Robert was diagnosed with a rare form of Non-Hodgkin's Lymphoma. Prior to this diagnosis, Robert had never been diagnosed with a serious illness and appeared to be in good health. |
| 39. Subsequent to diagnosis, Robert consulted with and sought opinions from various medical facilities, including the Mayo Clinic in Minnesota. | 24. Subsequent to diagnosis, Robert consulted with and sought opinions from various medical facilities, including the Mayo Clinic in Minnesota. |
| 40. Robert remained generally asymptomatic through 2005 and the general medical advice was to delay chemotherapy or radiation treatment until absolutely necessary. | 25. Robert remained asymptomatic through 2005 and the general medical advice was to wait and see how the lymphoma progressed. |
| 41. In 2006, Robert began experiencing symptoms from the Lymphoma including Lymphedema, which is the localized collection of lymphatic fluid due to blockage. Robert began experiencing Lymphedema in his legs as well as swelling in the groin area. | 26. In 2006, Robert began experiencing symptoms from the Lymphoma including Lymphedema, which is the localized collection of fluid due to blockage. Robert began experiencing Lymphedema in his legs. |
| 42. In 2006 Robert began having bouts of Cellulitis, a bacterial infection related to Lymphedema. Robert was hospitalized on more than one occasion for this infection. Cellulitis, if | 27. In 2006 Robert began having bouts of Cellulitis, a bacterial infection related to Lymphedema. Robert was hospitalized on more than one occasion for Cellulitis. Cellulitis, if untreated is |

4

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| untreated is life threatening for patients with Lymphoma. | life threatening for patients with Lymphoma. |
| 43. In order to treat the now symptomatic lymphoma and resulting Lymphedema, Robert began radiation treatments at the Indiana University Cancer Center in Indianapolis, Indiana. Among other treatments, Robert began receiving Rituxan treatments. | 28. In order to treat the now symptomatic lymphoma and resulting Lymphedema, Robert began radiation treatments at the Indiana University Cancer Center in Indianapolis, Indiana. Robert began receiving Rituxan treatments. |
| 45. In particular, Robert began having trouble breathing. His condition worsened by the end of April 2007. Robert was concerned that he would have to be hospitalized. | 30. In particular, Robert began having trouble breathing. His condition worsened by the end of April 2007. Robert was concerned that he would have to be hospitalized. |
| 46. Robert's condition continued to worsen and his state-of-mind was compromised. Shortly thereafter, Robert was hospitalized with severe pulmonary distress. Robert was diagnosis with PCP Pneumonia, which is a life-threatening condition for individuals such as Robert who suffered from a compromised immune system. Robert had been suffering from PCP Pneumonia as early as April 2007. | 31. Robert's condition continued to worsen and his state-of-mind was compromised. Shortly thereafter, Robert was hospitalized with severe pulmonary distress. Robert was diagnosis with PCP Pneumonia, which is a life-threatening condition for individuals such as Robert who suffered from a compromised immune system. Robert had been suffering from PCP Pneumonia as early as April 2007. |
| 47. Robert's condition continued to worsen and his state-of-mind was compromised. Shortly thereafter, Robert was hospitalized with severe pulmonary distress. Robert was diagnosis with PCP Pneumonia, which is a life-threatening condition for individuals such as Robert who suffered from a compromised immune system. Robert had been suffering from PCP Pneumonia as early as April 2007. | 32. Further, Robert was diagnosed with Pulmonary Fibrosis, which was caused by a reaction to his prior Rituxan treatments prior to April 2007. The damage caused by the fibrosis made Robert susceptible to PCP Pneumonia of which he became symptomatic starting in April 2007. |
| 48. As a result of the pulmonary distress and the undiagnosed illness in April 2007, Robert could not act independently and relied on Susan. | 33. As a result of the pulmonary distress and the undiagnosed illness in April 2007, Robert could not act independently and relied on Susan. |
| 49. Susan was aware of and had knowledge of Robert's weakened and susceptible state of mind. | 34. Susan was aware of and had knowledge of Robert's weakened and susceptible state of mind. |
| 50. During this period of Robert's declining health in late 2006 and 2007, Susan took control of Robert's healthcare management and influenced other aspects of his life. | 35. During this period of Robert's declining health in late 2006 and early 2007, Susan took control of Robert's healthcare management and influenced other aspects of his life. |
| 51. Robert became dependent on Susan for all facets of his | 36. Robert became dependent on Susan for all facets of his |

5

| DISTRICT COURT COMPLAINT | WILL CONTEST—BOONE COUNTY |
|---|---|
| medical care and wellbeing. Susan was responsible for informing Steven of Robert's medical condition of which she deliberately minimized, including but not limited to informing Steven of the May 2007 emergency hospitalization. Susan also informed Steven that it was not necessary to visit during the hospitalization and did not fully disclose to him of the serious stage of the Pneumonia. | medical care and wellbeing. Susan was responsible for informing Steven of Robert's medical condition of which she deliberately minimized, including but not limited to informing Steven of the May 2007 emergency after hospitalization and did not fully disclose to him of the serious stage of the Pneumonia. |
| 52. Subsequent from his release from his first major hospitalization Robert was put on an increased routine of daily medications. Even prior to this hospitalization, Robert was on daily medications that affected his mental state, capacity and overall personality, including but not limited to Predisone [sic]. | 37. Subsequent from his release from his first major hospitalization Robert remained on a routine of daily medication. |
| 53. Robert's illness continued to progress and his condition continued to deteriorate. Between September and November 2008, Robert began a series of in-patient chemotherapy treatments to prepare him for a stem-cell transplant. | 38. Robert's illness continued to progress and his condition continued to deteriorate. Between September and November 2008, Robert began a series of in-patient chemotherapy treatments to prepare him for a stem-cell transplant. |
| 54. In November 2008, Robert received a stem-cell transplant at the Indiana University Cancer Center. The effect of the treatment was determined to be unsuccessful. This caused Robert an increased amount of stress. Robert continued to suffer from the Lymphoma, Lymphedema and his other accumulating illnesses subsequent to the stem-cell transplant. | 39. In November 2008, Robert received a stem-cell transplant at the Indiana University Cancer Center. The treatment was determined to be unsuccessful. Robert continued to suffer from the Lymphedema and the effects of the Lymphoma subsequent to the stem-cell transplant. |
| 55. In the summer of 2009, Robert's condition began to cause pain and he began pain management care with an oncology pain management specialist. The significant amounts of medication given to Robert on a daily basis were then increased. | 40. In the summer of 2009, Robert's condition began to deteriorate rapidly and he began pain management care with an oncology pain management specialist. Robert was being given significant amounts of medication on a daily basis. |
| 56. In August 2009, Robert entered into home hospice care at his home in Zionsville, Indiana. Robert was heavily medicated and unable to care for himself. Robert's mental and physical condition continued to deteriorate. On October 15, 2009, Robert passed away days after his 62nd birthday. | 41. In August 2009, Robert entered into home hospice care at his home in Zionsville, Indiana. Robert was heavily medicated and unable to care for himself. |
| | 42. Robert's condition continued to deteriorate rapidly. On October 15, 2009, Robert passed away days after his 62nd |

6

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| | birthday. |
| 58. Upon information and belief, while Robert was seriously ill with Pulmonary Fibrosis and PCP Pneumonia, Susan attempted to circumvent the provisions of the "Valid Will" (or the Indiana intestacy statutes) and Prenuptial Agreement by directing the drafting of this 2007 Will. The existence of the "2007 Will" was kept from Steven. | 43. Upon information and belief, while Robert was seriously ill with Pulmonary Fibrosis and PCP Pneumonia, Susan attempted to circumvent the provisions of the "Valid Will" (or the Indiana intestacy statutes) and Prenuptial Agreement by directing the drafting of the "Altered Will." |
| 59. On April 30, 2007, while seriously ill with Pulmonary Fibrosis and PCP Pneumonia in Indianapolis, Indiana, Robert purportedly signed the "2007 Will" in a heavily medicated state. No videotape or audio recording was made of Robert's purported execution of the "2007 Will." | 44. On April 30, 2007, while seriously ill with Pulmonary Fibrosis and PCP Pneumonia in Indianapolis, Indiana, Robert purportedly signed[fn] the "Altered Will" in a heavily medicated state. No videotape or audio recording was made of Robert's purported execution of the "Altered Will." [Fn]Steven does not admit to the authenticity of Robert's signature on the Altered Will and reserves the right to present expert testimony as to the potential forgery of same. |
| 60. At all times relevant herein the witnesses listed in the "2007 Will" were in Kendallville, Indiana while Robert was in Indianapolis, Indiana purportedly signing the "2007 Will" as Robert was too ill to travel 3 ½ hours one way to Kendallville. The signature on the 2007 Will was verified by telephone. | 45. At all times relevant herein the witnesses listed in the "Altered Will" were in Kendallville, Indiana while Robert was in Indianapolis, Indiana purportedly signing the "Altered Will." |
| 61. Upon information and belief, the witnesses listed in the "2007Will" did not witness: (i) Robert sign the "2007 Will"; (ii) acknowledge his signature in the "Altered Will"; or (iii) someone else sign the "2007 Will" in Robert's name at Robert's direction and in Robert's presence. | 46. Upon information and belief, the witnesses listed in the "Altered Will" did not witness: (i) Robert sign the "Altered Will"; (ii) acknowledge his signature in the "Altered Will"; or (iii) someone else sign the "Altered Will" in Robert's name at Robert's direction and in Robert's presence. |
| 62. The "2007 Will" made material changes to Robert's estate plan. | 47. The "Altered Will" made material changes to Robert's estate plan. |
| 29. Prior to marrying Susan, Robert had a last will and testament that devised and bequeathed substantially all of the probate assets to his only child, Steven (the "Valid Will"). A copy of the "Valid Will" is attached as Exhibit "A." | 48. Upon information and belief, the "Valid Will" bequeathed and devised substantially all of Robert's probate assets to Steven. In addition, Steven was appointed the personal representative of Robert's estate. Upon information and belief, the Prenuptial Agreement affirmed Robert's desire to leave his probate assets to |

7

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| | Steven. |
| 63. The "2007 Will" disinherited Steven and bequeathed all personalty and devised all realty to Susan. This action was completely contrary to prior statements made to Plaintiff by Robert. | 49. The "Altered Will" disinherited Steven to the benefit of Susan and her children. *See* Exhibit A, Articles II and III. |
| 64. The "2007 Will" removed Steven as personal representative of Robert's estate and appointed Susan as the personal representative. This action was completely contrary to prior statements made to Plaintiff by Robert. | 50. The "Altered Will" removed Steven as personal representative of Robert's estate and appointed Susan as the personal representative. *See* Exhibit A, Article IV. |
| 65. If Susan could not serve as personal representative of Robert's estate, the "Altered Will" appointed Jessica Horowitz, Susan's daughter who is unrelated to Robert, to serve as personal representative. | 51. If Susan could not serve as personal representative of Robert's estate, the "Altered Will" appointed Jessica Horowitz, Susan's daughter who is unrelated to Robert, to serve as personal representative. *See* Exhibit A, Article IV. |
| 66. In no event was Plaintiff Steven to serve as personal representative under the "2007 Will" again contrary to discussions Steven had with his father who appreciated his position as an attorney. | 52. In no event was Steven to serve as personal representative under the "Altered Will." *See* Exhibit A, Article IV. |
| 67. Prior to Robert Being diagnosed with his terminal illness, Robert held all his assets solely in his name. *None* of Robert's assets were held with Susan as joint tenants with rights of survivorship, tenants by the entireties, or in any other type of co-tenancy relationship. | 53. Upon information and belief, while Robert's health deteriorated due to the advancing stages of Non-Hodgkin's Lymphoma, Susan attempted to circumvent the provisions of both the "Valid Will" and the Prenuptial Agreement by directing the drafting of the Codicil through her attorney(s). |
| 82. Prior to Plaintiff's forced opening of his father's probate estate, Susan kept all estate documents from Steven. | 56. Upon information and belief, neither Susan nor her attorney(s) provided Robert with a copy of the Codicil. |
| 29. Prior to marrying Susan, Robert had a last will and testament that devised and bequeathed substantially of the probate assets to his only child, Steven (the "Valid Will"). A copy of the Valid Will is attached hereto as Exhibit "A". 31. The Valid Will in Exhibit "A" also appointed Steven as | 58. Upon information and belief, the "Valid Will" bequeathed and devised substantially all of Robert's probate assets to Steven. In addition, Steven was appointed the personal representative of Robert's estate. Upon information and belief, the Prenuptial Agreement affirmed Robert's desire to leave his probate assets to |

8

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| personal representative of his father's probate estate. | Steven. |
| 83. After Robert's death, his estate was opened in the Boone County Superior Court, Estate Docket 06D01-0911-EU-131, and the 2007 Will was probated. Pursuant to the terms of the 2007 Will, Susan was appointed as personal representative. | 63. Steven is in an interested party in Robert's estate pursuant to Ind. Code § 29-1-1-3, with standing to bring claims asserting a Will Contest. |
| 84. Because Steven was entitled to the vast majority of Robert's probate and non-probate estate under the Valid Will and the Prenuptial Agreement, Steven filed a will contest in the Boone County Superior Court, Estate Docket 06D01-0911-EU-131 in February 2010 challenging the 2007 Will. | |
| 68. After Robert was diagnosed with his illness, Robert was in a weakened and compromised state of mind due to his disease, daily regime of consuming heavy medications, and his realization of impending death. | 65. The "Altered Will" was obtained through fraud, duress, and/or other breaches; therefore, is invalid, illegal, and should be revoked. |
| 69. Susan, relying on Robert's weakened and susceptible state of mind, concocted her artifice to deprive Steven of his inheritance and prevent a potentially successful will contest from depriving her of Robert's assets. | 66. On April 30, 2007, Robert did not have sufficient capacity to know the extent and value of his property, whose were the natural objects of his bounty, their desserts with respect to their treatment and conduct towards him, and to retain such facts in mind long enough to have a will prepared and executed. |
| 70. Susan began adding her name as joint owner on Robert's financial accounts. | 67. Accordingly, Robert lacked the necessary capacity to legally execute the "Altered Will." |
| 71. Susan also attempted to convert Robert's solely-owned assets into joint tenancy with rights of survivorship property. | 68. The "Altered Will" was the result of the unlawful imposition of Susan, whereby the victim, Robert, was forced to do an act which was the result of undue influence. |
| 72. Susan also attempted to convert Robert's solely-owned assets into tenancy by the entirety property. | 71. The Codicil was obtained through fraud, duress, and/or other breaches; therefore, is invalid, illegal, and should be revoked. |
| 73. Susan transferred some of Robert's assets to her children | |

9

| DISTRICT COURT COMPLAINT | WILL CONTEST – BOONE COUNTY |
|---|---|
| Jessica Horwitz and Zachary Horwitz. | 72. On August 28, 2009, Robert did not have sufficient capacity to know the extent and value of his property, whose were the natural objects of his bounty, their desserts with respect to their treatment and conduct towards him, and to retain such facts in mind long enough to have a codicil prepared and executed. |
| 74. Susan may have transferred Robert's assets into her own name or her own accounts. | |
| | 73. Accordingly, Robert lacked the necessary capacity to legally execute the Codicil. |
| 89. As previously described, Susan intentionally interfered with Plaintiff's approximately $11 million inheritance from his father, Robert, through her acts of fraud, undue influence, manipulation and other intentional conduct. | |
| | 74. The Codicil was the result of the unlawful imposition of Susan, facilitated by her attorney(s), whereby the victim, Robert, was forced to do an act which was the result of undue influence. |
| 90. As a direct and proximate result of Susan's intentional interference with Plaintiff Steve's inheritance, Robert's estate plan was altered and Susan became the personal representative under the 2007 Will as well as the illegitimate beneficiary of inter-vivos transfers of Robert's assets. | |

1823215_1