# TORTIOUS INTERFERENCE WITH AN EXPECTANCY

© 2006 Curtis E. Shirley

## INTRODUCTION

The tort of intentional interference with an inheritance or gift allows a disappointed heir to recover for an expectancy that should have occurred. The Probate Litigation Seminar outlines the various types of actions that could involve alternatives to a claim for tortious interference. These include will and trust contests, claims, actions concerning fraudulent transfers of non-probate assets and breach of trust, accountings, and the intermeddlar petition. As in a typical will contest, all of these actions involve an opportunity to raise issues concerning the testator's soundness of mind, the undue execution of documents, and whether the documents were executed while under duress or obtained by fraud. See Indiana Code Section 29-1-7-17. With such a variety of alternatives, why the tort?

As with any intentional tort action, the plaintiff is asking for compensatory and punitive damages, where the defendant pays his own attorney fees. Here the "testator" can even be alive. In comparison, an action involving an estate usually looks to dividing assets already in its possession, with no punitive damages, and complimentary defense fees. Although not an issue in Indiana, in some jurisdictions only the tort action can involve a jury, and the tort can be raised in any court of general jurisdiction.

Take for example a typical will contest, where the decedent treated his son and daughter equally until his last Will. Caretaker son has his lawyer meet with the decedent (along with threats of sending the parent to a nursing home), and the out of town daughter gets cut out. What did the caretaker son have to lose? Even if the daughter is successful in a will contest, her best day in Court exposes the son only to the loss of one half of his ill gotten inheritance, along with one half of the expenses attributable to defending the suit. In other words, the parties would be placed in a position nearly identical to their status prior to the tort, with no penalty to the caretaker son.

As a practical matter, considering the costs of litigation and the emotional costs to the plaintiff and her family, in most cases the plaintiff would settle for something less than her one half share, and the caretaker son rewarded. If the tort were involved, and the son would face paying his own attorney fees and the possibility of compensatory and punitive damages, he would have



PLAINTIFF'S EXHIBIT 2

less motivation to coerce a change in the testator's estate plan. Unfortunately for Indiana, the typical scenario that leads to a will contest encourages every person fairly represented in a prior Will to get greedy.

## RECENT CASE LAW

In the case of <u>Minton v. Sackett</u>, 671 N.E.2d 160 (Ind.App. 1996) (attached), Indiana has recently addressed the tort of intentional interference with an inheritance by holding that where a will contest provides the plaintiff with an adequate remedy, the tort will not lie. 671 N.E.2d at 163. In the <u>Sackett</u> case, Susanne Minton filed several causes of action: a breach of contract to devise, a will contest, an action for conversion, for unjust enrichment, and for tortious interference. The Court adopted the Restatement (Second) of Torts, Section 774(B), which states that

> One who by fraud or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to others for the loss of the inheritance or gift.

671 N.E.2d at 162.

The Court reasoned that the public policy of providing injured parties a remedy clashed with the exclusivity of the probate code. To the extent that a person has an opportunity to file a will contest, the Court concluded that "We cannot allow Susanne a second bite at the apple by allowing her to seek the same type of damages in a tort action." 671 N.E.2d at 163.

In addition to the reasons cited by the Court, this rule makes sense because it prevents the tort suit from being used as a collateral attack on the admission of a Will to probate. Although not an issue in the <u>Sackett</u> case, there is a chance that a tort action could effect the ultimate distribution of estate assets to third parties. Because a will contest must be utilized if possible, there is a better chance that all interested parties will be notified, in comparison to a tort action where only the plaintiff and defendant receive notice. This article will address the availability of the tort in light of <u>Sackett</u>, and then examine elements of the tort.

## WHEN TO USE THE TORT

The Court in <u>Sackett</u> made three separate inquiries: the nature of the assets sought (estate), how they were sought (will

contest), and who was seeking them (heir). There are several situations where the estate assets are not involved, a will contest would not make the plaintiff whole, or the plaintiff and the personal representative are not the same persons. The tort is thus an ideal cause of action under the following circumstances:

    1.    Where the plaintiff was a prior or possible beneficiary under a revocable trust. See Martin v. Martin, 687 So.2d 903 (Fla.App. 1997); Davidson v. Feuerherd, 391 So.2d 799 (Fla.App. 1980); Hammons v. Eisert, 745 S.W.2d 253 (Mo.App. 1988).

    2.    Where the testator was prevented from making a Will leaving an inheritance to the plaintiff. See Ransdel v. Moore, 53 N.E.2d 767 (Ind. 1899); see also Latham v. Father Divine, 85 N.E.2d 168, 171 (N.Y. 1949). This may hold true even though the statutory formalities for executing a Will are compromised. The tort is especially necessary here if the plaintiff is not an intestate heir and there is no prior Will benefiting him. See Bohannon v. Wachovia Bank & Trust Co., 188 S.E. 390 (N.C. 1936). Even if the plaintiff is an intestate heir, the tort is appropriate where the intestate share is less than expected. See Allen v. Leybourne, 190 So.2d 825 (Fla.App. 1966).

    3.    Where the matter involves non-probate assets, such as the plaintiff being removed as a joint tenant on real estate, from multi-party accounts, or as a designated beneficiary on life insurance policies or retirement plans. See Nemeth v. Banhalmi, 425 N.E.2d 1187, 1190 (Ill.App. 1981) (involving an insurance policy); Watts v. Haun, 393 So.2d 54, 55 (Fla.App. 1981) (endorsed blank stocks were placed in an envelope bearing plaintiff's name). The sky is the limit on how non-probate assets could be infringed, from obtaining leases or options to purchase, to using non-probate assets as collateral for loans. Even if these assets were brought back into the estate, and a will contest successful, the plaintiff is usually not made entirely whole unless the prior will so provides.

    4.    Where the defendant causes the testator to convey property out of his estate during lifetime. See Plimpton v. Gerrard, 668 A.2d 882 (Me. 1995) (testator gave away real estate and reserved life estate); Estate of Jeziorski v. Tomera, 516 N.E.2d 422 (Ill.App. 1987); Hadley v. Cowen, 804 P.2d 1271 (Wash.App. 1991). After death, interested persons and the personal representative can file a suit on

behalf of the decedent to set aside unlawful transfers. In the meantime, if the defendant may squander the money, the tort is especially effective during the testator's lifetime.

      5.    The tort is the probably the only remedy available where the plaintiff is denied an inheritance or gift by a defendant who does not actually receive the property. For example, if the testator is living with his caretaker daughter, and her caretaker husband causes the testator to benefit the daughter, she cannot be sued for conversion, etc., and the husband is the proper defendant. In other situations, such as gifts or inheritances to a charitable organization, it is difficult to bring suit against "innocent" third parties; this could occur where a wealthy sibling sees to it that the runt of the family (and himself) gets left out by talking the parent into a charitable plan.

      6.    The tort may remain viable even if a will contest would make the plaintiff whole, where a special administrator must be appointed and be successful in bringing assets back into the estate through a separate action. The Court may allow a second bite at the apple because the tort plaintiff can hardly control the special administrator. The law may not require the tort plaintiff to bring a will contest and petition for the appointment of a special administrator (an indirect action), where the tort plaintiff can just as well sue the defendant directly.

All of these situations should survive the parameters of Sackett.

Attorneys should keep in mind that Sackett is not an Indiana Supreme Court opinion. The case was settled before any petition to transfer could be filed. Even where a will contest would have made the plaintiff whole, the Indiana Supreme Court recognized the tort in Ransdel v. Moore, 53 N.E.2d 767 (Ind. 1899), which was subsequently followed in Thomas v. Briggs, 189 N.E.2d 389 (Ind.App. 1934), and Newsom v. Estate of Haythorn, 122 N.E.2d 149 (Ind.App. 1954). In the Sackett opinion, the Court distinguished these cases as involving "equitable relief ... through the imposition of a constructive trust." 671 N.E.2d at 162. But equitable relief and constructive trusts are merely remedies. The Ransdel, Thomas, and Newson cases clearly relied upon tortious interference as the cause of action, but the Sackett opinion summarily dismissed the distinction.

If the Sackett opinion is narrowly construed, that is, the tort is only dismissed where a will contest (and not all probate

4

remedies) will make the plaintiff whole, it is doubtful that anyone will take the time or expense to pursue the matter on appeal.

## ELEMENTS OF THE TORT

The tort was first recognized as a cause of action in <u>Hutchins v. Hutchins</u>, 7 Hill 104 (N.Y.Sup.Ct. 1845). As to the elements of the tort, the Restatement standard requires (1) the existence of an expectancy of an inheritance or gift; (2) intentional conduct that prevented the receipt; (3) by fraud or other tortious conduct; (4) that caused the loss of the inheritance or gift. <u>See Estate of Knowlson</u>, 562 N.E.2d 277 (Ill.App. 1990).

### (1) Existence of an Expectancy

Any competent person may freely revise his estate plan during lifetime. People not only change their minds, but the law presupposes that anyone can give away what they own without consideration. Against this backdrop, a plaintiff can have difficulty in proving that he was entitled to an inheritance or gift. But this expectancy has economic value, which can be seen by the law allowing the would be plaintiff to effectively convey his interest as sufficient consideration for contracts. <u>See Hooker v. Hooker</u>, 32 A.2d 68 (Conn. 1943).

The existence of an expectancy is satisfied where the testator took some step toward perfecting the inheritance or gift. If the testator changes his Will, the plaintiff may maintain an action by showing a designated inheritance under a revoked Will. <u>Newson v. Estate of Haythorn</u>, 122 N.E.2d 149 (Ind.App. 1954). This same reasoning should hold true if the plaintiff is removed as a joint tenant on real estate, from multi-party accounts, or as a designated beneficiary in life insurance policies, retirement plans or in a revocable trust. Not only is an expectation shown by the revoked document, the plaintiff may also satisfy this element by introducing evidence of a draft. <u>See Davidson v. Feuerherd</u>, 391 So.2d 799, 802 (Fla.App. 1980) (defendants convinced testator not to sign a trust amendment already drafted by his attorney).

In some jurisdictions the plaintiff may satisfy the element of expectation by relying on the testator's intent. <u>Allen v. Leybourne</u>, 190 So.2d 825, 827 (Fla.App. 1966). <u>See Cooke v. Cooke</u>, 278 So.2d 683, 684 (Fla.App. 1973) (a writing is not required to prove the existence of an expectancy); <u>cf., Holt v. First National Bank</u>, 418 So.2d 77, 80 (Ala. 1982) (written evidence is required).

The plaintiff (heir) may be able to rely on the intestate statutes to establish the element of expectation. See Robinson v. First State Bank of Monticello, 433 N.E.2d 285, 291 (Ill.App. 1982), rev'd, 454 N.E.2d 288 (Ill. 1983); see also Estate of Jeziorski v. Tomera, 516 N.E.2d 422 (Ill.App. 1987). This can even be stretched to protecting a person who is a natural object of the testator's bounty. See Morrill v. Morrill, 679 A.2d 519 (Me. 1996). The Restatement (Second) of Torts, upon which Indiana heavily relies, supports this view. Section 774(B), comment (b), defines an "inheritance" as "any devise or bequest that would have otherwise have been made under a testamentary instrument, or any property that would have passed to the plaintiff by intestate succession." At the weakest end of the spectrum is the situation where the testator gives his money away during lifetime to someone other than the defendant. But the tort can be used where improper gifts have diminished the size of the ultimate estate. See Cyr v. Cote, 396 A.2d 1013, 1017 (Me. 1979).

(2) Intent

The tort assumes a confluence of an overt act by the testator, and wrongful conduct by the defendant which precipitates the change in estate plan. Unlike a will contest where the testator's intent is at issue, the tort relies upon the intent and conduct of the wrongdoer. Black's Law Dictionary sees an intentional tort as one where the defendant desires to bring about damage to another. Even if the defendant did not intentionally interfere, there may be some point where the law will hold him accountable for the consequence of whatever actions he took to deprive the plaintiff. The Restatement (Second) of Torts, Section 774(B), comment (c), allows the defendant to use legitimate means to persuade a person to disinherit a child. "It is not unlawful for a man, by honest intercessions and modest persuasions, to procure a will to be made in his behalf." Smith v. Whitestone, 39 S.E.2d 127 (S.C. 1946). Accidental remarks are not enough. See Hegarty v. Hegarty, 52 F.Supp. 296 (D.C.Mass. 1943).

This can be a difficult issue in the case of a defendant caretaker who tells the testator that he will have to go to a nursing home unless he awards the caretaker son everything. Was this said with an intent to disinherit other siblings? Or was this said to compensate the caretaker for past assistance and to ensure compensation for future services? Or was this merely a suggestion? What if the caretaker son instead said that "no one else in the family loves you?" In many cases, defendants have resorted to character assassinations, attacks on reputation,

manipulation and the generation of ill will. No matter the exact words, the difficulty of proof is enormous.

In a will contest, the plaintiff asserting undue influence must show that the decedent's free agency was destroyed and the decedent was constrained to do what was against her will, being unable to refuse or too weak to resist. See McCartney v. Rex, 145 N.E.2d 400 (Ind.App. 1957). The tort, however, has never required such a level of proof. The focus is on the defendant's intent that caused the disinheritance, not on the manifestation of that intent on the decedent. It is the rare will contest that resolves itself solely on the issue of undue influence; so as the tort gathers greater appeal, most likely any distinction in language will be merged.

### (3) Tortious Conduct

Typical intentional torts include assault, battery, slander, libel, defamation, trespass, conversion, forgery, alteration, suppression of a will, fraud, duress, undue influence, and abuse of fiduciary duty or confidential relationship. Mere negligence has not been enough. Although there are no cases discussing the matter, the writer believes that negligent interference concerning a gift or inheritance should be actionable where a special relationship exists between the testator and the defendant. See, e.g., Reed v. Hollister, 186 P. 819 (Cal.App. 1919) (where the defendant was acting as the decedent's attorney).

### (4) Causation

Initially in all tort suits, causation requires the "but for" test; that is, would the plaintiff have received his gift or inheritance, but for the defendant's actions? If this is satisfied, the Restatement defines proximate cause as a "reasonable certainty established by proof of a high degree of probability" that the testator would have made the particular gift or the bequest would have remained at his death. Restatement (Second) of Torts, Section 774(B), comment (d) (1977). As a practical matter, it is important to introduce evidence of the defendant's knowledge of the expectancy. Concerning the difficulty of proof, duress, coercion and undue influence are typically exercised outside of the presence of third parties. Proof of the tort often depends upon circumstantial evidence. Id. Thus, if the defendant isolated the testator, making it impossible to know the precise tortious acts involved, such facts may well establish a jury question, even though there is no direct evidence of overreaching.

7

(5) Damage

Keep in mind that the wrong addressed by the tort is an expectancy, not a vested interest. A suit during the testator's lifetime presents several problems. The plaintiff can hardly place a constructive trust over the testator's assets, and the damages must take account that it is an expectancy, not a certainty, being infringed. There is also a speculative nature to the claim, because the testator cannot be deprived of the possibility of changing his mind. If interference with an inheritance, not a gift, is involved, damages are much easier to assess after the testator has died. See Brown v. Kirkham, 926 S.W.2d 197 (Mo.App. 1996).

Damages include the value of the gift or inheritance otherwise lost due to the defendant's conduct. The plaintiff is also entitled to nominal, consequential, or punitive damages. If necessary, a constructive trust, restitution or other equitable remedies are available. Although the plaintiff is seeking damages from a third person, and not from the estate, any damage awarded in a suit after the testator dies would most likely allow the defendant to use any proper inheritance as a set off, or raise the right of retainer.

## WHEN TO FILE

A will contest accrues at the moment an invalid Will is admitted to probate. The tort, however, accrues when the defendant interfered. No case has required a plaintiff to file the tort during the testator's lifetime. It could be that the six year (6) fraud or real estate statute applies, or the two (2) year personal property statute. See Indiana Code Section 34-1-2-1 & -2. In any event, the limitations period may not be an issue because the tort is usually done in secret. The discovery rule or proof of fraudulent concealment may save an otherwise late filing.

Filing the tort during the testator's lifetime is especially appealing where the misconduct has resulted in irrevocable transfers. Concerning the availability of possible witnesses, foremost here is that the testator can take the stand and testify as to what the defendant said or did. Fraud does not take place in public places, and the odds of knowing the specifics of a defendant's words or deeds can be very slim. The Dead Man's Statute also does not apply here, so the plaintiff is free to testify as to all lifetime transactions. The availability and recollection of other witnesses is of concern, because of the extended time

possible between the tort being committed and an action filed. See, e.g., Harmon v. Harmon, 404 A.2d 1020, 1025 (Me. 1979).

Filing the tort during the testator's lifetime may even be required, where the defendant dies first. The tort would be a necessary claim in the defendant's estate, if he had already diminished the testator's estate or otherwise caused damage that cannot be undone. See Carlton v. Carlton, 575 So.2d 239, 241 (Fla.App. 1991).

After death, it is always advisable to maintain the action within the five (5) month probate filing period. See Robinson v. First State Bank, 454 N.E.2d 288, 294 (Ill. 1983) (holding that the tort complaint necessarily attacks the propriety of the Will, and the probate limitations period could not be tolled even for fraudulent concealment). The Probate Code may restrict an otherwise timely, independent action, because all matters involving estate assets is a proceeding in rem. See Indiana Code Section 29-1-7-2. Principles of res judicata, claim or issue preclusion, or offensive collateral estoppel may also hamper any other independent actions where the Court enters a final order approving a will for probate. If the plaintiff decides to pursue the matter after the five (5) month period expires, in such a case the potential tort plaintiff could argue that he did not receive notice as required under the Due Process clause, or if a will contest is already on file, seek to amend pursuant to Trial Rule 15(C).

## PRACTICAL ASPECTS OF THE LITIGATION

### (1) Consolidation

The tort should be filed as a civil action, and would most likely be accompanied by a will or trust contest, an action concerning fraudulent transfers of non-probate assets, breach of trust, or conversion. On the estate side, the plaintiff could also file a claim, a petition for accounting, or the intermeddlar. In terms of procedure, the courts will most likely consolidate the tort action with all other estate litigation, because of the similarity in parties, discovery and proof. In the unlikely event that the tort occurred outside the county of the decedent's domicile, the parties and the courts could have an interesting dispute over venue. While the Courts sort out the issues of venue and consolidation, the plaintiff has an opportunity to get a quick deposition of the defendant in the tort action, while reserving the right to depose at a later time in other estate battles.

### (2) Attorney Fees

As to representation, the attorney hired to defend the probate proceeding will most likely represent the tort defendant; however, in the tort action, the defendant must pay his own attorney fees. If the defense attorney does not keep proper billing records, estate beneficiaries other than the tort defendant may well object to any final accounting.

### (3) Pleadings

In many of the probate pleadings no answer is required. For example, the formal requisites for filing a will contest do not contemplate an answer. Indiana Code Section 29-1-7-17. Because a response is not required, the allegations are deemed denied or avoided. Trial Rule 8(D); see State v. Whitley Circuit Court, 198 N.E.2d 3, 5 (Ind. 1964), and Lincoln Nat. Bank v. Mundinger, 528 N.E.2d 829, 835 n.7 (Ind.App. 1988). The personal representative also need not answer a claim. Indiana Code Section 29-1-14-10. In comparison, the tort allegations require a response. Almost all cases throughout the country have allowed a jury in the tort action, but interesting arguments can be raised to deny the jury request if the case involves a trust, or any equitable remedy such as restitution or a constructive trust over the assets. See Fratcher, SCOTT ON TRUSTS, vl.5, sec.468, pp. 357-58 (4th ed. 1989); Midwest Fertilizer Co. v. AG-Chem Equipment, 510 N.E.2d 232 (Ind.App. 1987).

Along with the answer, the tort defendant may file any appropriate 12(B)(6) motions. With respect to allegations of fraud, if there is no written evidence the defendant would raise Trial Rule 9(B), which requires fraud to be plead with particularity. In response, the plaintiff should ask the Court for additional time, such as ninety (90) days or until the close of discovery. The Court usually grants additional time to amend the complaint because the fraud involved in this type of case is usually done in secret, and not in the supermarket or at family reunions. See Workman v. Workman, 113 Ind.App. 245 (1943). The writer has found that in most cases the defense attorney will agree to an extension of at least sixty (60) days for the plaintiff to amend or dismiss the fraud allegations. If fraud cannot be shown, the case usually goes forward on allegations of undue influence or the confidential relationship.

(4) Motions

After the pleading stage, the defendant will most likely move for partial summary judgment on the tort claim. If the case does not involve one of the exceptions to <u>Sackett</u>, as listed at the beginning of this article, and the will contest should provide an adequate remedy, the plaintiff can still survive summary judgment. As stated earlier, the Court in <u>Sackett</u> knew for certain that estate assets were involved, and that the same person who filed the will contest also filed the tort. In many cases, the plaintiff's attorney can file a Trial Rule 56(F) affidavit stating that until discovery is completed (or an accounting filed), the plaintiff does not know the extent of any non-probate assets. If attempts are being made to bring the contested property back into the estate, the tort plaintiff can still survive if the estate action is being brought by a special administrator.

The defendant must be very very careful in moving for summary judgment. In <u>Sackett</u> the Court converted the defendant's motion to dismiss into one for summary judgment because of the need to acknowledge the various pleadings filed by the parties. 671 N.E.2d at 161-62. By having filed a motion to dismiss, there was nothing to designate to the Court. When filing for summary judgment, the defendant can inadvertently waive the Dead Man's statute with respect to the plaintiff's competency if not careful. *See Taylor v. Taylor*, 643 N.E.2d 893, 896 (Ind. 1994) (where the Dead Man's statute was waived by the use of depositions in support of a motion for summary judgment).

What evidence should the defendant designate in support of a summary judgment motion, asserting that a will contest furnishes the plaintiff with a sufficient remedy? At first blush the defendant could easily establish the fact that a will contest is pending by designating the actual complaint. However, by law those complaints are verified, and there is an excellent argument that the defendant has waived the Dead Man's statute by designating such evidence. The safer approach is to designate the Court's chronological case summary or the docket entries.

As to burdens of proof, if the case involves multi-party accounts, the defendant can make use of the language in <u>Estate of Banko v. National City Bank of Evansville</u>, 662 N.E.2d 476 (Ind.App. 1993), that requires the plaintiff to show by clear and convincing evidence that the testator did not intend to make a gift at the time the account was created. <u>But see Reiss v. Reiss</u>, 500 N.E.2d 1223 (Ind. 1986). Conversely, if a fiduciary or confidential relationship exists and non-probate assets are transferred to the

defendant (apart from multi-party accounts), the defendant bears the burden of rebutting a presumption of undue influence by clear and convincing evidence, and must show that he acted in good faith, did not take advantage of his position of trust, and that the transaction was fair and equitable. See Banko, supra, 622 N.E.2d at 479-80. Only then does the plaintiff bear the burden. See Villanella v. Godbey, 632 N.E.2d 786 (Ind.App. 1994); cf., Indiana Rule of Evidence 301 ("A presumption shall have continuing effect even though contrary evidence is received."). In all other matters, the plaintiff must prove his case by a preponderance.

### (5) Trial

At trial, with respect to each of the tort elements required, the defendant need only show a single deficiency to be successful. As a practical matter, it was always possible that the testator later could have chosen to alter any of the plaintiff's expectations for perfectly legitimate reasons, and this fact can be used forcefully depending upon the character of the plaintiff and his relationship with the testator.

Although the tort complaint need not contain allegations of the testator's unsoundness of mind, the plaintiff may respond with evidence that the testator was of a weakened condition concerning the capacity requirements to make a valid inter vivos transfer, see Thorn v. Cosand, 67 N.E. 257 (Ind. 1903), or a valid will, see Farner v. Farner, 480 N.E.2d 251 (Ind.App. 1985).

### (6) Settlement

At the conclusion of trial, or if any settlement is reached, the parties should not lose sight of the gift or estate tax consequences of the plaintiff's award. If only the tort action is filed, the Internal Revenue Service may take the position that such damages are taxable income to the plaintiff. This may allow the plaintiff to ask the jury for a higher judgment to offset the tax. Where at all possible (in the tort action or a claim situation), the plaintiff should file a will contest to allow for a more equitable apportionment of tax in the event of settlement.

If the Internal Revenue Service takes the position that the tort damages are not taxable income, the defendant will likely bear the cost of paying all gift, estate and inheritance taxes under the Will he engineered.

## CONCLUSION

There are many situations where the tort of intentional interference with an expectancy allows a disappointed heir to recover for a gift or inheritance that should have occurred. It is a powerful weapon in comparison to the usual alternatives available. Plaintiff attorneys must become familiar with the tort in the circumstances where those alternatives cannot provide adequate relief. With the notoriety of the Sackett opinion, defense attorneys will most certainly face these issues with greater frequency.

## BIBLIOGRAPHY

Minton v. Sackett, 671 N.E.2d 160 (Ind.App. 1996) (relying on Restatement (Second) of Torts, Sec. 774(B) (1979)), attached.

Mathis, "An Illinois Lawyer's Guide to Tortious Interference with Inheritance Expectancy," Article in November 1996 Illinois Bar Journal magazine.

Ledford, "Intentional Interference with Inheritance," 30 Real Property, Probate and Trust Journal 326 (Summer 1995).

M. Read Moore, "At the Frontier of Probate Litigation," Article in November/December (1993) Probate & Property magazine.

Boyle, "Tortious Interference with an Inheritance," Article in March 1990 Probate Practice Reporter magazine.

39 P.O.F.2d 177 (1984), "Interference with Right to Share of Decedent's Estate," by Jonathan M. Purver.

Driscoll, "Tortious Interference with the Expectancy of a Legacy: Harmon v. Harmon," 32 Me.L.Rev. 529 (1980).

Evans, "Torts to Expectancies in Decedent's Estate," 93 U.Pa.L.Rev. 187 (1944).

18 A.L.R.5th 211, "Action for Tortious Interference with Bequest as Precluded by Will Contest Remedy".

22 A.L.R.4th 1229, "Interference with Inheritance or Gift".